### CLENDININ v. THE STEAM-SHIP ALHAMBRA, etc.

*(District Court, E. D. New York.    July 23, 1880.)*

1. COLLISON—SCHOONER'S LIGHTS.—The side lights of a schooner were so placed that when one stood at the stem of the vessel he could see both the red and the green light at the same time, without moving his head. *Held*, that the schooner was in fault for carrying lights so arranged, when an approaching steamer was thereby misled as to the course she was pursuing, and a collision ensued.

2. SAME — SAME — DUTY OF STEAMER. — In such cases, however, the steamer is not absolved from fault, where the change of lights indicated action on the part of the schooner, not only uncalled for but improbable, and where the starting of the engine of the steamer, after it had once been stopped, was the immediate cause of the disaster.

*W. W. Goodrich,* for libellant.

*Butler, Stillman & Hubbard,* for respondent.

BENEDICT, D. J.    The collision that gave rise to this action occurred in the night-time, on the high seas, between the schooner Owen P. Hines and the steam-ship Alhambra.    The schooner was sailing free, at the speed of about five knots an hour, upon a north-north-east course.    The steamer was steaming at the speed of from seven to eight knots an hour, upon a south-west course.    Both vessels had green and red lights set.    The vessels were upon crossing courses, with the green light of the schooner displayed towards the steam-ship as she approached the schooner from the leeward.

It is proved by those on board the steamer that the schooner's green light was seen by them at a considerable distance off, but bearing so as to render it unsafe for the steamer to attempt to cross the schooner's bows, wherefore the steamer's engine was stopped.    Afterwards it was started again at half speed, when shortly the vessels came in collision, the port bow of the steamer and the starboard bow of the schooner coming in contact.    After the collision the steamer passed on without having spoken the schooner, and soon the schooner sunk, her crew being saved by taking to the boat.

These facts, which are undisputed, would leave the case a clear one for the libellant were it not that the steamer produces the positive testimony of her master, wheelsman, look-out, and a man on deck, that after the green light of the schooner was seen the light disappeared, and the red light of the schooner became visible, which gave rise to the supposition that the schooner was undertaking to avoid the steamer by bearing away, and led the steamer to resume her voyage. From the schooner there is the testimony, equally positive, of three witnesses—all who were on deck—that no change

whatever was made of the schooner's course until at the instant of striking, when, as all agree, she luffed.

This testimony from the respective vessels in regard to the course of the schooner, and the lights she displayed, apparently so contradicting, can, I think, be reconciled by reference to the fact, stated by the master of the schooner in the most positive manner, that the side lights of the schooner were placed so that when he stood at the stem he could see both the red and green light at the same time without moving his head.

This fact shows that it may have been possible for those on the steamer to see the schooner's red light, as they say they did, while the schooner's course was held unchanged, as those on the schooner say was the case. In this way, as I am inclined to think, an explanation is offered of the testimony, and statements otherwise wholly irreconcilable are harmonized. But this explanation convicts the schooner of fault for carrying lights so arranged as to mislead an approaching vessel in regard to the course she was pursuing. This fault on the part of the schooner does not, however, in my opinion, absolve the steamer from fault. The steamer saw the schooner displaying a green light, and so near that, according to the testimony of the master of the steamer, it was not safe to attempt to cross the schooner's bows, accordingly the engine of the steamer was immediately stopped. But afterwards, and according to the master, as soon as he was satisfied that he saw a red light, the steamer was started again at half speed.

This act of starting the engine of the steamer after it had once been stopped was the immediate cause of the disaster, for the method in which the two vessels came together indicates that the schooner would have passed ahead of the steamship, although close at hand, if the steamship's engines had not been started. To start the engine under such circumstances was a fault. Assuming it to be true that the green light of the schooner disappeared and her red light became visible, as the master of the steamer states, such a change of

the lights under the circumstances called for the utmost circumspection. It indicated action on the part of the schooner not only uncalled for but improbable, and it should have aroused suspicion in regard to the movements of that vessel, and caused the master of the steamer, having stopped his vessel, to hold her where she was until the location and movements of the schooner were placed beyond all doubt. According to the master the red light showed him that the schooner would pass him safely on his port hand without any action on his part; and he started his vessel again, not for the purpose of avoiding the schooner, but because he had been led into the belief that the schooner, by bearing away, had avoided him, and was then upon a course that would carry her safely by on his port hand.

I think that the circumstances hardly justify the master of the steamer in coming to that conclusion so soon as he did. An instant more of delay would have shown him that he had been misled into supposing that the schooner had borne away; and, in the exercise of the great caution demanded by the circumstances, when once he had stopped his steamer he should have delayed starting her again until the schooner had in fact passed him.

Upon these grounds I hold the collision in question to have been occasioned by fault on both sides, and accordingly must apportion the damages between them.